EAST ATLANTA BANK *v.* LIMBERT *et al.*

No. 13542.   JANUARY 16, 1941.

488

*Thomas E. McLemore,* for plaintiff in error.

*E. H. Sheats* and *James D. Childs,* contra.

DUCKWORTH, Justice. ■ The plaintiff in error contends that the petition is fatally defective and should have been dismissed on general demurrer, because it appears therefrom that the petitioner's claim of lien arose by virtue of his being a subcontractor. The cases of *Cartter* v. *Rome & Carrollton Construction Co.,* 89 *Ga.* 158 (15 S. E. 36), and *Smith* v. *Van Hoose,* 110 *Ga.* 633 (36 S. E. 77), are cited in support of this contention. In those cases it was

held that petitions by subcontractors to foreclose liens for labor and materials were subject to special demurrer on the ground that the claims for labor and materials furnished were combined in a lump-sum demand. It was held that a subcontractor has no such contractual relationship with the owner as to entitle him to a lien for his contract price under our lien laws. These decisions did not hold that a subcontractor has no lien for work done or material furnished for the improvement of real estate "upon the employment of a contractor," as provided by the Code, § 67-2001(2), but recognized the right to such a lien. In the *Cartter* case it was stated that the subcontractor was entitled to a lien for the amount of the material furnished; but it was held that it was not entitled to a lien for procuring the work to be done on its own account. In the instant case there was no special demurrer to the portion of the petition alleging a gross sum as due for work done and material furnished under the subcontract. Since the petitioner was at least entitled to a lien for so much of the gross sum as represented the materials furnished, the petition was not fatally defective because it combined the claim for materials furnished with the claim for work done. In the claim of lien filed by the plaintiff the amount of the lien claimed "for labor and material" was not stated. Cf. *Wager* v. *Carrollton Bank,* 156 *Ga.* 783 (120 S. E. 116). Therefore it is not defective as stating in a gross sum the amount due for work done and material furnished.

After the plaintiff's claim of lien arose, the property of the owner was sold under powers of sale contained in prior security deeds; and the sales are alleged to have brought a sum in excess of the debt secured by the deeds. This surplus is alleged to be in the hands of the security-deed holder, or attorney in fact, who sold the property. In this suit against the contractor, the owner, and the attorney in fact, the petitioner seeks to foreclose his lien in equity and have it decreed to be a lien on the surplus fund in the hands of the attorney in fact. It is contended that surplus funds retains the character of real estate in so far as junior lienholders are concerned, and that such lienholders may proceed in equity against such funds as if they were real estate. Numerous decisions of other jurisdictions are cited in support of this position. In Markey v. Langley, 92 U. S. 142 (23 L. ed. 701), where realty was sold under a power of sale contained in a mortgage, it was said:

"The liens of the mortgages and the mechanics' lien attached to the proceeds of the sales in the same manner, in the same order, and with the same effect, as they bound the premises before the sales were made." In Morris v. Glaser, 106 N. J. Eq. 585 (151 Atl. 766), it was said: "Surplus moneys arising on foreclosure stand in place of the land itself as to the liens thereon or vested rights therein. . . The theory upon which such surplus proceeds are held to be land is that the surplus usually arises because more land is sold than is necessary, in one case, to pay the debts of decedent; in another (foreclosure), than is necessary to satisfy the mortgage debt; and in partition, because the land is impossible of division and for practical purposes it has been converted into money. But in each case the money stands for the land, and the rights therein are determined as though the court were dealing with the land itself. Upon an application for distribution of such surplus moneys, the division amongst those entitled is, in effect, an equitable partition of the land for which the money stands. The excess, though in the form of money, remains, as before, impressed with the character of the land." See also LaCentra v. Jackson, 245 Mass. 14 (139 N. E. 429); Zelley v. Zelley, 101 N. J. Eq. 37 (136 Atl. 738); Roy v. Roy, 233 Ala. 440 (4) (172 So. 253).

The theory of transferring liens divested by sales to the proceeds is not new in this State. It is true in cases of sales by administrators and executors. Code, § 113-1709; *Middleton* v. *Westmoreland,* 164 *Ga.* 324 (138 S. E. 852). Where property subject to a lien is sold under judicial process, the lien is divested from the property and attaches to the proceeds of the same, upon proper notice by the party claiming the lien to the officer to hold the money. Code, § 67-2301 (3). We know of no reason why the same rule should not apply to liens against property sold under power of sale contained in a security deed as applies in cases of other types of sales. The sale effectively divests all inferior liens. The surplus funds represent the equity of the owner in the real estate, and until the attorney in fact has paid these funds to a person entitled thereto there is no reason why equity should not take jurisdiction to impress liens upon them. The decision in *Middleton* v. *Westmoreland,* supra, is authority for holding that petitioner is entitled to come into equity and foreclose his lien and have the surplus proceeds of the sale impressed with that lien. That case involved a

foreclosure of an attorney's lien against property which had been previously sold by an executor. It was held that the lien could be foreclosed and impressed upon the proceeds of the sale. Reasoning by analogy, it is clear that under that authority the court did not err in overruling the demurrers to the petition.

█ Was the amendment adding a new count to the petition subject to demurrer on the ground that it alleged a new and distinct cause of action? The security deeds involved recited that they were given to secure a stated sum "or any other present or future indebtedness or liability" of the grantor to the grantee. In the amendment it was alleged that the parties fraudulently took advantage of this provision of the .deed by entering into an agreement whereby the grantee advanced to the grantor certain sums with which to pay another materialman who had no lien upon the houses and lots. The additional amounts so advanced increased the indebtedness of the grantor to an amount equal to that brought by the sale of the property, thus leaving no fund against which to assert the plaintiff's lien. By amendment he prayed for judgment of damages in the amount of his claim of lien. The cause of action stated in the amendment is one sounding in tort, in that the fraud of the defendants is the basis of the recovery sought. The cause of action alleged in the original petition is in its nature ex contractu, the statute establishing the lien sought to be foreclosed having been upheld on the ground that the lien is based upon the implied assent of the owner. See *Prince* v. *Neal-Millard Co.,* 124 *Ga.* 884 (53 S. E. 761, 4 Ann. Cas. 615). It is therefore plain that the amendment sought to add a new and distinct cause of action, and should have been stricken on demurrer. *Long* v. *Bullard,* 59 *Ga.* 355; *Sharpe* v. *Columbus Iron Works Co.,* 136 *Ga.* 483 (71 S. E. 787); *Griffith* v. *Moore,* 185 *Ga.* 120 (5) (194 S. E. 551); *Wardlaw* v. *Wardlaw,* 185 *Ga.* 181 (2) (194 S. E. 187).

*Judgment affirmed in part, and reversed in part. All the Justices concur.*